IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

BRITTANY WADDELL                                                                PLAINTIFF

V.                                              CIVIL ACTION NO. 1:19-CV-88-SA-DAS

MISSISSIPPI DEPARTMENT OF WILDLIFE,
FISHERIES AND PARKS *et al*                                          DEFENDANTS

ORDER AND MEMORANDUM OPINION

Brittany Waddell filed her Complaint [1] in this Court on April 30, 2019 after sustaining a wound in her back when she was shot by an officer of the Mississippi Department of Wildlife, Fisheries and Parks ("MDWFP"). Presently before the Court is Defendant MDWFP's Motion to Dismiss [64] arguing that the Plaintiff's claims against it are barred by the Eleventh Amendment. The issues are fully briefed and ripe for review.

*Factual and Procedural Background*

On or around February 2, 2018, the Plaintiff, Brittany Waddell, was riding in the backseat of a car with Samuel Rice. Rice was driving his vehicle on Proper Street in Alcorn County, Mississippi when Police Officers attempted to initiate a stop to cite Rice for a tail-light violation. Instead of yielding to the officers' order to stop, Rice evaded the officers and a high-speed chase ensued. Waddell remained in the backseat throughout the duration of the chase. At some point after Rice exited the Corinth City limits, Deputy Officer Tim Boggs took lead of the pursuit. Rice then turned on County Road 302, a muddy logging road, and continued to evade the MDWFP officers. Once Boggs turned onto the muddy road behind Rice, his patrol car became stuck, ending his involvement in the pursuit. The other officers, however, continued to pursue Rice and eventually blocked his car. There were several instances where the officers lost sight of Rice's car. At some point, Rice circled around and attempted to escape using the same route he entered on

County Road 302. According to Waddell, when Rice attempted to escape, he almost hit Deputy Boggs and two others and ultimately collided with one of the patrol cars. At this point, Officers Lloyd, Stegall, Mynatt, and Voyles began shooting at Rice's car. Waddell sustained a gunshot wound in her back. Waddell claims that she was unarmed and did not pose an immediate threat of harm to the deputies.

Waddell filed her Complaint [1] alleging various state and federal law claims against the Mississippi Department of Wildlife, Fisheries and Parks; Tishomingo County, Mississippi; Alcorn County, Mississippi; City of Farmington, Mississippi; and Officers Michael Voyles, Thomas Mynatt, Shane Stegall, Tim Boggs, and Robert Lloyd. In particular, the Plaintiff alleges that the Defendants violated her Due Process rights by using excessive and unreasonable force against her. In addition, she claims that the Defendants failed to adequately train the Officers, which ultimately caused her harm. MDWFP claims that it is entitled to Eleventh Amendment sovereign immunity and that the Plaintiff's claims against it should therefore be dismissed.

*Discussion*

The issue presented in the Defendant's Motion is relatively straightforward: whether claims against MDWFP are barred based upon Eleventh Amendment sovereign immunity. MDWFP argues that it is entitled to sovereign immunity because it is considered an arm of the state and the State of Mississippi has not waived its immunity. Waddell argues, however, that MDWFP is not an arm of the state and even if it is, the state legislature consented to suit and waived its immunity in the Mississippi Tort Claims Act.

I.     *Sovereign Immunity*

The Eleventh Amendment provides that: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. This Amendment, in effect, "strips courts of jurisdiction over claims against a state that has not consented to suit." *Pierce v. Hearn Indep. Sch. Dist.*, 600 Fed. Appx. 194, 197 (5th Cir. 2015) (*per curiam*) (*citing Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)). "The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." *Lapides v. Bd. of Regents*, 535 U.S. 613, 616, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002) (citation omitted). Both federal and pendent state law claims are barred from being asserted against a state in federal court. *Pennhurst State Sch & Hosp.*, 465 U.S. at 119–21, 104 S. Ct. 900. This immunity only bars claims against the state. *See Alden v. Maine*, 527 U.S. 706, 756, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999). Entities, such as state agencies, officials or otherwise, do not enjoy the protection of sovereign immunity unless it is established that the agency, official or otherwise is an "arm of the state." *Id*.

MDWFP claims that it is an "arm of the state" and that it therefore enjoys the same immunity as the state itself. "There is no bright-line test for determining whether a political entity is an 'arm of the state' for purposes of Eleventh Amendment immunity." *Vogt v. Board of Com'rs of Orleans Levee Dist.*, 294 F.3d 684, 689 (5th Cir. 2002). Instead, "the matter is determined by reasoned judgment about whether the lawsuit is one which, despite the presence of a state agency as the nominal defendant, is effectively against the sovereign state." *Earles v. State Board of Certified Public Accountants of Louisiana*, 139 F.3d 1033, 1037 (5th Cir.1998). To determine whether a state agency like MDWFP is an arm of the state, courts utilize six factors:

> (1) Whether the state statutes and case law characterize the agency
>     as an arm of the state;
> (2) The source of funds for the entity;
> (3) The degree of local autonomy the entity enjoys;

3

(4) Whether the entity is concerned primarily with local, as opposed to statewide, problems;

(5) Whether the entity has authority to sue or be sued in its own name; and

(6) Whether the entity has the right to hold and use property.

*Clark v. Tarrant County, Texas*, 798 F.2d 736 (5th Cir. 1986). No single factor is dispositive. *Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 319 (5th Cir. 2001). Nor is each factor weighed equally. *Williams v. Mississippi Department of Public Safety*, 2018 WL 1128133 (N.D. Miss. March 1, 2018). For example, "the second—the source of funds—is the most important, while the fifth and sixth—whether the agency has authority to enter into litigation and hold property—are less so." *Id*. "An entity need not show that all of the factors are satisfied; the factors simply provide guidelines for courts to balance the equities and determine if the suit is really one against the state itself." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 327 (5th Cir. 2002).

   a. *Whether the state statutes and case law characterize MDWFP as an arm of the state*

The state legislature enacted Section 49-4-1 with the expressed intent "to conserve, manage, develop and protect [the state's] natural resources and wildlife conservation functions of state government into . . . the Mississippi Department of Wildlife, Fisheries and Parks." Miss. Code § 49-4-1. A fair reading of this statute leads to a conclusion that the state legislature entrusted the functions of state government to MDWFP. The statute does, in fact, characterize MDWFP as an "arm of the state". As to case law, the Court is hard pressed to find a case which expressly categorizes this agency as an "arm of the state." Thus, this factor weights *slightly* in favor of a finding that MDWFP is an arm of the state considering that the state statutes only implicitly characterize MDWFP as an "arm of the state."

*b.  The source of MDWFP's funding*

This factor "is given the greatest weight because one of the principal purposes of the Eleventh Amendment is to protect state treasuries." *Vogt*, 294 F.3d at 693 (*citing Cozzo v. Tangipahoa Parish Council—President Government*, 279 F.3d 273, 281 (5th Cir. 2002). "In assessing the second factor, [courts] conduct inquiries into, first and most importantly, the state's liability in the event there is a judgment against the defendant, and second, the state liability for the defendant's general debts and obligations." *Id*. While the Plaintiff does not deny that MDWFP receives its funding from the State, Waddell argues that any funding to pay judgments comes from the "Tort Claims Fund" not the general treasury. The Tort Claims Fund is a special fund created by the State legislature in Section 11-46-17 where the Department of Finance and Administration earmarks funds to pay money judgments against claims levied against the State. Miss. Code §11-46-17(1). The Plaintiff contends that because this fund is *de facto* an insurance policy, the Eleventh Amendment should not apply to any claim filed against Mississippi since the monies used for a judgment would not be withdrawn from the general fund.[1] However, the first line of Section 11-46-17 proves the Plaintiff's argument null. It states, "there is hereby created *in the State Treasury* a special fund to be known as the "Tort Claims Fund." *Id* (emphasis added). Funds allocated to the Tort Claims Fund are also "state funds" for the purposes of this analysis. Thus, this factor weighs in favor of finding MDWFP as an "arm of the state."

*c.  The degree of local autonomy MDWFP enjoys*

In the Fifth Circuit, determining an agency's autonomy requires analysis of the extent of the entity's independent management authority as well as the independence of the individual

---

[1] Plaintiff's counsel articulated the same argument in *Williams v. Mississippi Department of Public Safety*. There, the District Judge Glen Davidson ruled that the funds in the Tort Claims Fund are nonetheless state funds. 2018 WL 1128133 (N.D. Miss. March 2, 2018).

commissioners who govern the entity. *Vogt*, 294 F.3d at 694 (citations omitted). The question is to what extent the entity is "primarily controlled by the state." *Parez*, 307 F.3d at 329-30. MDWFP is managed and controlled by the Executive Director and the Board of Commissioners. The entity's management authority is vested in an Executive Director appointed by the Governor of Mississippi. *See* Miss. Code § 49-4-6(3) (stating that "the department shall be headed by an executive director who shall be appointed by the Governor."). The statute provides that the Executive Director has the authority to appoint department heads, organize the department as deemed appropriate to carry out the department's responsibilities, and develop and implement a merit promotion system for all sworn law enforcement officers. Notably absent from the statute is any required oversight or supervision of the Executive Director's day-to-day operations, thereby indicating a high degree of independence.

The entity's regulatory authority is vested in a Board of Commissioners. These five Commissioners, appointed by the Governor, are responsible for adopting, amending, or repealing regulations, issuing licenses and permits, assessing the fitness of the executive director, and conserving, managing, and developing wildlife and fishery resources in the State. Absent their appointment to the Commission, the statute does not indicate any additional control the Governor has over the Commissioners. Similar to the Executive Director, the statute provides the Commissioners authority to act without additional advice, consent, oversight, or supervision from either the Governor, Legislature, or even the Executive Director. Thus, the Court concludes that MDWFP enjoys a high degree of local autonomy. This factor weighs against finding MDWFP as an "arm of the state."

  *d. Whether the entity is concerned with local or statewide problems*

  This factor "properly centers on 'whether the entity acts for the benefit and welfare of the state as a whole or for the special advantage of local inhabitant.'" *Vogt*, 294 F.3d at 695 (*quoting Pendergrass v. Greater New Orleans Expressway Com'n*, 144 F.3d 342, 347 (5th Cir. 1998). Limited territorial boundaries suggest that an agency is not an arm of the state. *Id; See, e.g., Cozzo v. Tangipahoa Parish Council—President Government*, 279 F.3d 273, 282 (5th Cir. 2002) (noting that a sheriff's duties are "generally performed only within a single parish"); *Hudson v. City of New Orleans*, 174 F.3d 677, 690–91 (5th Cir. 1999) ("[W]e have found it highly useful to examine the geographic reach of the district attorney's prosecutorial powers."). In the Court's view, Section 49-4-8 makes clear that the legislature intended for MDWFP to conserve, manage, develop, and protect the natural resources of the entire State of Mississippi. *See* Miss. Code § 49-4-8 (stating that "the Department of Wildlife, Fisheries and Parks shall have [the duty] to conserve, manage, develop and protect the wildlife of the State of Mississippi."). Thus, this factor weighs in favor of finding MDWFP as an "arm of the state."

  *e. Whether MDWFP has the authority to sue or be sued in its own name*

  The statute creating the agency does not indicate whether or not the agency has the power to sue or be sued in its own name. And, as noted above, the Court has been unable to locate any caselaw directly addressing this factor. Thus, this factor is neutral.

  *f. Whether MDWFP has the right to hold and use property in its own name*

  The statute creating MDWFP does not expressly provide the agency the "right to hold and use property." Instead it authorizes MDWFP "to take charge and have full jurisdiction and control over all state parks." Miss. Code § 49-4-8(b). Importantly, the statute does not provide the entity any authorization to purchase property, hold property, or make use of property for any purpose.

Instead, MDWFP is authorized to manage the property already owned by the state. Thus, this factor weighs in favor finding MDWFP as an "arm of the state."

In sum, the overwhelming majority of these factors weigh in favor of a finding that MDWFP is an "arm of the state" for the purposes of Eleventh Amendment immunity.

II.      *Exceptions to Eleventh Amendment Immunity*

Eleventh Amendment sovereign immunity is not absolute. *See, e.g., Meyers v. Texas*, 410 F.3d 236, 241 (5th Cir. 2005). There are three theories upon which an individual may be able to sue a State: (1) abrogation; (2) waiver; or (3) *Ex parte Young*. The Plaintiff argues only that the State of Mississippi waived immunity when it enacted the MTCA.

"A state may at its pleasure waive its sovereign immunity by consenting to suit." *Meyers*, 410 F.3d at 241. "The decision to waive immunity must be voluntary on the part of the sovereign. Generally, the Court will find a waiver either if (1) the state voluntarily invokes federal jurisdiction, or (2) the state makes a 'clear declaration' that it intends to submit itself to federal court jurisdiction.'" *Id.* (*quoting College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76, 119 S.Ct. 2219, 144 L. Ed. 2d 605 (1999)).

The Plaintiff claims that the Fifth Circuit determined in *Black v. North Panola School District* that the MTCA operates as a waiver of immunity. 461 F.3d 584 (5th Cir. 2006). But as the Court discussed in great detail in *Williams v. Mississippi Department of Public Safety*, *Black* is inapposite here. *Black* dealt specifically with whether the plaintiff's failure to assert her federal claims in state court barred her from asserting those same claims in federal court. Thus, at issue was whether *res judicata* should apply, not whether the MTCA acted as a waiver to the plaintiff's Section 1983 claim in federal court. The Plaintiff is correct that the Fifth Circuit stated that the MTCA operated as a waiver of immunity, but as the Court in *Williams* articulated "the Fifth Circuit

8

did not, however, find that waiver extended to Eleventh Amendment immunity for federal court actions." *Id* at 595. The Court held instead that because none of the federal claims would have been barred by sovereign immunity in Mississippi state court, *res judicata* applied. *Id* at 598. For the same reasons set forth in *Black* and articulated by the Court in *Williams*, the Plaintiff's argument here fails.[2]

*Conclusion*

MDWFP is entitled to sovereign immunity because it is an arm of the state and no exception to sovereign immunity applies. Therefore, for all the reasons discussed above, Defendant MDWFP's Motion to Dismiss is GRANTED. The Plaintiff's claims against MDWFP are dismissed *with prejudice*. This case is not closed.

SO ORDERED this, the 6th day of July, 2020.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

---

[2] As noted above, the Plaintiff did not argue that either of the other exceptions—abrogation or *Ex Parte Young*—apply. But because the Court has "an independent obligation to determine whether subject-matter jurisdiction exists," the Court will briefly address whether these two exceptions apply. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006).

"Abrogation of Eleventh Amendment immunity applies only if Congress has unequivocally expressed its intent to abrogate a state's sovereign immunity per Section 5 of the Fourteenth Amendment. *Duncan v. Univ. of Tex. Health Sci. Ctr. at Houston*, 469 Fed. Appx. 364, 366 (5th Cir. 2012) (per curiam) (*citing Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 364, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001)). Congress has not done so. Thus, abrogation does not apply.

"*Ex parte Young* represents an equitable exception to Eleventh Amendment sovereign immunity." *Ex parte Young*, 209 U.S. 123, 155-56, 28 S.Ct. 441, 52 L. Ed. 714 (1908). This exception allows suit to be brought against a state officer in federal court to enforce the Supremacy Clause of the Constitution if the following criteria are met: (1) the plaintiff has pleaded his case against the state official responsible for enforcing the law at issue in that person's official capacity; (2) the plaintiff has alleged an ongoing violation of federal law; and (3) the plaintiff has requested the proper relief, that is, prospective, injunctive relief, or relief that is ancillary to prospective relief. *See Walker v. Livingston*, 381 Fed. Appx. 477, 478 (5th Cir. 2010) (per curiam) (*citing Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996)). Setting aside the first two elements, the third element is clearly not satisfied as the Plaintiff has requested only monetary damages. *Ex Parte Young* does not apply.