THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

BRITTANY WADDELL                                                                                          PLAINTIFF

VS.                                                                            CAUSE NO. 1:19-CV-00088-SA-DAS

MICHAEL VOYLES, ET AL.                                                                              DEFENDANTS

ORDER AND MEMORANDUM OPINION

On March 12, 2020, two of the Defendants, the City of Farmington, Mississippi and Robert Loyd, jointly filed a Motion for Summary Judgment [85]. Thereafter, on October 10, 2020, one of the other Defendants, Michael Voyles, filed a Motion for Summary Judgment [121]. The Court finds that taking up both Motions [85, 121] simultaneously is appropriate given the specific facts of this case and the applicable law. The Motions [85, 121] have been fully briefed and are now ripe for review.

*Factual and Procedural History*

This cause of action arises as a result of a police chase that took place at around 10:00 pm on February 1, 2018. Officer Robert Loyd of the Farmington Police Department received a call from dispatch that Officers from the Corinth Police Department were in pursuit of a fleeing black Jeep traveling in the direction of Farmington. Officer Loyd positioned himself near the city limits in order to intercept the vehicle should it cross into Farmington. As the Jeep approached, Officer Loyd clocked the Jeep traveling 81 miles per hour. Once the Jeep passed him, he joined the pursuit.

Once the pursuit exited the Farmington's city limits and entered the jurisdiction of Alcorn County, Alcorn County Sherriff's Deputy Timothy Boggs took over the lead position in attempting to apprehend the Jeep. Although the Corinth Police Department subsided its efforts in the pursuit at some point after Officer Boggs took the lead position, Officer Loyd remained part of the chase.

Once Officer Boggs entered the chase, the pursuit continued at speeds that reached up to 90 miles per hour, during which the driver, Samuel Rice, exhibited erratic driving patterns.[1] Subsequently, the pursuit entered Tishomingo County, Mississippi on County Road 302. The Jeep, in a continued effort to evade law enforcement, turned down a logging road off County Road 302 into a rural wooded area known as "Sharp's Bottom." The road was muddy due to recent weather events. Officer Boggs' police cruiser became stuck in the mud while the Jeep continued down the logging road into the wooded area.

Next, Conservation Officer Michael Voyles, with the Mississippi Department of Wildlife, Fisheries, and Parks was asked to assist Officer Boggs with pulling his car out of the mud. Once Officer Voyles arrived and pulled Officer Boggs' police cruiser out of the mud, he proceeded with his four-wheel drive truck down the road. Additionally, Officer Loyd proceeded in the same direction on foot. Both Officers continued with the intention of apprehending the Jeep.

Leading up to this point, the Plaintiff, Brittany Waddell, had been a passenger in the front seat of the Jeep. Initially, Waddell borrowed the Jeep from a friend and was using it to move residences. She picked up Rice from a hotel and allowed him to take over driving duties as they ran a few errands. As they were driving around Corinth, the Corinth Police Department attempted to pull over the Jeep to conduct a routine traffic stop, which ultimately led to the high-speed chase.

Turning back to the chase itself, after entering Sharp's Bottom and separating from law enforcement, Rice and Waddell exited the vehicle. Waddell began to walk away from Rice and after an argument between the two ensued, she was knocked to the ground and became muddy. She testified that she had decided she "was going to walk." [121], Exh. 1, p. 37. She went back to

---

[1] Defendants Farmington and Loyd attached a dash camera video from Officer Boggs' police cruiser to their Motion [85]. The Court has reviewed and considered the video in addressing the present Motions [85, 121].

2

the Jeep to retrieve her purse and some warmer clothes that were residual to her moving residences at that time. At approximately the same time, Officer Voyles and Officer Loyd arrived in the vicinity.

The convergence of all accounts indicates that once the Jeep was sighted by Officer Voyles, in his truck, and Officer Loyd, who was on foot, Rice simultaneously became aware of their presence. Waddell testified that Rice stated to her that he knew they were approaching. Rice restarted the Jeep, turned on the lights and began to move toward Officer Voyles' truck. At that moment, Officer Voyles activated his spotlight and blue lights to alert the Jeep to stop and to illuminate the dark area. Officer Voyles positioned his truck in the road in an attempt to block the Jeep's path. However, rather than stopping, the Jeep rammed the truck on the front driver's side fender and was able to continue back up the logging road toward County Road 302. In the immediate aftermath of ramming and surpassing Officer Voyles' truck, the Jeep accelerated toward Officer Loyd who was standing in the logging road with his flashlight and service weapon while instructing Rice to stop. The Jeep accelerated toward Officer Loyd and when it was in the immediate zone of danger, Officer Loyd jumped out of the way to his left. According to Officer Loyd, the Jeep then changed direction to target him. It was then that he discharged his pistol at the Jeep's front right tire. As the Jeep continued back up the logging road, Officer Loyd again discharged his pistol at the back tires in an attempt to disable it. However, it is apparent from the record that this was not the moment in which the Plaintiff was injured. Officer Loyd got into the truck with Officer Voyles at that time, and they continued to pursue the Jeep at which point Officer Voyles radioed to the Officers still located at the logging road entrance.

Officer Boggs had remained at the entrance of the logging road along with two Tishomingo County Deputies who had been dispatched to the area, Officers Thomas Mynatt and Shane Stegall.

3

As the Jeep approached the entrance, it is unclear whether it got stuck or Rice voluntarily stopped. Officers Voyles and Loyd arrived from the rear of the Jeep shortly thereafter. The Jeep then began accelerating and reversing erratically. There were then several sudden changes of direction and a potentially life-threatening situation ensued. For instance, Officer Loyd, who had exited Officer Voyles' truck to approach the Jeep from the rear during one of its brief moments of being stopped, had to jump out of the way when it suddenly reversed toward him. He discharged his pistol at the left side tires in this moment. Officer Voyles had to reverse his truck to avoid a second collision during this exchange as the Jeep was reversing recklessly toward him in this relatively small space. In another instance, it accelerated toward Officers Boggs, Mynatt, and Stegall. There were shots fired at the Jeep at that time and it became stalled in the mud. Officer Mynatt approached the vehicle on the driver's side and gave instructions for Rice to exit the vehicle. At that time, Rice restarted the Jeep, and hit Officer Mynatt, knocking him to the ground. This cleared a path for the Jeep to enter County Road 302 again. Once this happened, Officers Mynatt, Stegall, Voyles, and Loyd all fired at the Jeep. The Mississippi Bureau of Investigation Report states that the Jeep then "jumped a hill" back onto County Road 302 and headed east. [121], Exh. 3, p. 4.[2] Shortly after escaping, the Jeep again stalled out. Rice fled on foot and Waddell remained in the backseat. Thereafter, she was discovered by law enforcement to have been shot. She was tended to by law enforcement and first responders and eventually airlifted to receive medical treatment.

Waddell filed her initial Complaint [1] on April 30, 2019, against the Mississippi Department of Wildlife, Fisheries and Parks, Tishomingo County, Alcorn County, and the City of

---

[2] The MBI Report, [121], Exh. 3, was previously sealed at the request of Defendants Farmington and Loyd. *See* Order [84]. However, after reviewing the exhibit and the parties' briefing in this case, the Court found that the Report appeared to be critical evidence to be considered in ruling on the present Motions [85, 121] and therefore ordered the Defendants to show cause as to why the Report should remain sealed. *See* Order [105]. The Defendants did not respond to the Court's Order [105]. The Clerk of Court is hereby directed to unseal the Report.

Farmington. Waddell subsequently filed an Amended Complaint [42] after discovery identified the individual Officers who were involved in the incident: Officers Michael Voyles, Thomas Mynatt, Shane Stegall, Tim Boggs, and Robert Loyd.[3]

Only the claims against Officer Loyd, the City of Farmington, Mississippi, and Officer Voyles are relevant for purposes of the present Motions [85, 121]. First, Waddell alleges identical claims against Officers Loyd and Voyles pursuant to 42 U.S.C. § 1983: (1) improper use of excessive and deadly force against her in violation of the Fourth Amendment; and (2) deprivation of her Fourteenth Amendment right to life, liberty, or property. In addition to the claims against the individual Officers, Waddell asserts that the City of Farmington is liable, pursuant to Section 1983, for failure to train. Additionally, she asserts a state law negligence claim against Farmington. The Court again emphasizes that Waddell's claims against the other Officers, agencies, and municipalities are not relevant to the present Motions [85, 121].

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The nonmoving party must then "go beyond

---

[3] On July 6, 2020, the Court entered an Order and Memorandum Opinion [104] dismissing Officer Boggs as a defendant pursuant to Rule 12(c).

5

the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Analysis and Discussion*

As noted above, Waddell has asserted claims against Officers Loyd and Voyles, as well as against the City of Farmington. The Court will first address the claims against the Officers and then turn to the claims against Farmington.

I. *Claims against Officer Loyd and Officer Voyles[4]*

As noted above, Waddell has asserted Section 1983 claims against the Officers for purported violations of her Fourth and Fourteenth Amendment rights. However, the Fourteenth

---

[4] The Amended Complaint [42] is unclear as to whether the Officers are sued in their individual or official capacity. However, in stating her claims, the Plaintiff's Amended Complaint [42] asserts "[d]efendants are liable to Plaintiff for her injuries, damages and losses." *Id*. Furthermore, in raising their affirmative defenses, both Officers Loyd and Voyles have asserted qualified immunity which "protects government officials performing discretionary functions from individual liability for civil damages…" *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011). To the extent that the claims are against the Officers in their official capacity, they are treated as claims against the municipality. *See Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 417 (5th Cir. 2018*)* (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)) (citation omitted) (holding suits against officials in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent.") Thus, the Court's analysis as to the City of Farmington will address those claims.

Amendment claim can easily be dismissed at the outset because "we are instructed to analyze all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen. . . under the Fourth Amendment and its reasonableness standard . . [.]" *Bros. v. Zoss*, 837 F.3d 513, 518 (5th Cir. 2016) (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (internal quotes omitted)); *see also Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 278 (5th Cir. 2015); *see also Goodman v. Harris Cty.*, 571 F.3d 388, 397 (5th Cir. 2009). Therefore, because Waddell's claims are properly analyzed under the Fourth Amendment, her Fourteenth Amendment claims against the Officers are dismissed.

As to the Fourth Amendment claims, both Officers allege that they are entitled to qualified immunity. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009). The defense of qualified immunity may be successfully invoked by a police officer "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982); *see also Cantu v. Rocha*, 77 F.3d 795, 805-06 (5th Cir. 1996).

"To deny qualified immunity at the summary judgment stage, the district court must answer yes to two questions." *McDonald v. McClelland*, 779 F. App'x 222, 225 (5th Cir. 2019) (citing *Pearson*, 555 U.S. at 236) (internal quotes omitted) (alteration in original). "The first question is whether the officer violated a constitutional right." *Id.* at 225 (citing *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019)). "The second question is whether the right at issue was clearly

7

established at the time of [the] alleged misconduct.'" *Morrow*, 917 F.3d at 874 (quoting *Pearson*, 555 U.S. at 232) (internal quotes omitted). "[A] reviewing court may tackle these questions in whatever order it deems most expeditious." *Marie Ramirez v. Guadarrama*, , 2021 WL 435099, at *2 (5th Cir. Feb. 8, 2021) (citing *Pearson*, 555 U.S. at 232). Thus, the two questions pertinent to our inquiry in this case are: (1) whether the Officers' alleged conduct violated Waddell's constitutional rights, and, if so, (2) whether those rights were clearly established at the time of the shooting. *See Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009).

In first addressing whether the Officers' alleged conduct violated Plaintiff's constitutional rights, Waddell's contention is that her Fourth Amendment rights were violated because Officer Loyd's and Voyles' utilization of their firearms was excessive and unreasonable in light of the surrounding circumstances. The analysis of whether an officer's conduct violated the Fourth Amendment hinges on whether the officer's conduct was objectively reasonable. *Graham*, 490 U.S. at 388 (holding "excessive force in the course of making [a] ...'seizure' of [the] person ... [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard."). In determining whether the Officer's conduct was reasonable here, "[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Scott v. Harris*, 550 U.S. 372, 383, 127 S. Ct. 1769, 1778, 167 L. Ed. 2d 686 (2007) (citing *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)).

Specifically, the Supreme Court, in *Scott*, addressed a factual scenario that "closely resemble[d] a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury." 550 U.S. at 380. In *Scott*, the Supreme Court was confronted with a 1983 cause of action after a police officer applied his push bumper to

8

the rear of the fleeing suspect's vehicle which caused the suspect's vehicle to leave the roadway, overturn, and crash. *Id.* at 377. The suspect became a quadriplegic as a result. *Id.* As in the current case, the Supreme Court in *Scott* had the advantage of a police dashcam video. *Id.* at 378. The video showed the suspect's vehicle "run multiple red lights and travel for considerable periods of time in the occasional center left-turn-only lane, chased by numerous police cars forced to engage in the same hazardous maneuvers just to keep up." *Id.* at 380-81. In analyzing whether the deadly force applied to a car driving in this manner violated the Fourth Amendment, the Supreme Court held that the use of deadly force does not violate the Fourth Amendment when the fleeing suspect "posed an actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase." *Id.* at 384, 127; *see also Mullenix v. Luna*, 577 U.S. 7, 15, 136 S. Ct. 305, 310, 193 L. Ed. 2d 255 (2015).

With the *Scott* standard in mind, the Court turns to the evidence before it in this case. The evidence shows that prior to entering the logging road the Jeep drove erratically at speeds that reached up to 90 miles per hour. [85], Exh. 1. In doing so, the Jeep covered significant ground, crossing through several counties and municipalities, thereby placing numerous bystanders, in addition to the Officers attempting to apprehend him, in serious danger. Upon initially being apprehended on the logging road, the Jeep rammed Officer Voyles' truck and targeted Officer Loyd before proceeding in a threatening manner in the direction of the other Officers at the intersection of County Road 302 and the logging road. In the moments leading up to the shooting, the Officers were undoubtedly in a zone of danger. Particularly, Officers Loyd and Voyles, whose conduct is the subject matter of the present Motions [85, 121], had to move out of the Jeep's path to avoid being hit when it reversed toward them after they approached from behind.

9

Waddell argues that the Jeep was simply trying to escape a muddy logging road and "did not present an immediate threat of serious harm to Officer Loyd or others on the road at that point." [91]. While it is true that a suspect simply evading capture cannot be subjected to deadly force, once an officer reasonably believes that the suspect poses a threat of serious harm to the public or the officers, then deadly force is reasonable and does not violate the Fourth Amendment in attempting to effectuate a seizure. *See Scott*, 550 U.S. at 386 (holding that the justification of deadly force against fleeing suspects is situation specific and not a *per se* rule. Considerations include whether the lives and well-being of others involved are at risk and whether there was a safer alternative) (Ginsburg, J., concurring); *see also Thompson v. Mercer,* 762 F.3d 433, 437 (5th Cir. 2014) (holding no Fourth Amendment violation occurred where deadly force was employed on suspect that posed threat of serious harm to the officer and others) (citation omitted).

Waddell's assertion that the Jeep did not pose a threat is completely discredited by the dashcam footage. [85], Exh. 1. Prior to entering the logging road, Rice was driving dangerously on a dark night at speeds up to 90 miles per hour on a narrow two-lane road, through multiple counties and municipalities. *Id*. Additionally, Officer Loyd's sworn affidavit indicates that he:

> …observed the Jeep engage in dangerous illegal activity such as forcing cars off the road, swerving across double yellow lines, ignoring emergency lights of law enforcement, disregarding stop signs, passing cars in dangerous areas, driving on the wrong side of the road, targeting civilian and officer vehicles, and traveling at dangerous and excessive speeds.

[85], Exh. 2, p. 2.

The dashcam video is consistent with Officer Loyd's affidavit. The Court finds unreasonable and squarely rejects Waddell's argument that the Jeep did not pose an imminent public safety threat. [85], Exh. 1. It is readily apparent that anybody driving on the road, or even standing somewhere nearby, as an innocent participant in public life was at risk via the dangerous

10

speeds and aggressive changes in direction that the Jeep exhibited. *Id*. Similarly, the Officers were in danger as exhibited by the Rice's willingness to ram their vehicles and even hit an Officer with his own vehicle. While the Jeep was traveling across these different localities in a dangerous manner, the Officers did not resort to deadly force until the Jeep rammed their cars, targeted them while on foot, and even successfully hit and knocked down Officer Mynatt. In the Court's view, the fact that the Officers did not resort immediately to deadly force in this situation goes toward the Officers' conduct being reasonable. The evidence shows that the Officers were reacting in real-time to the threat posed by the Jeep.

Waddell also advances an argument that, in essence, avers once the chase entered the logging road that the pursuit was called off by the Officers and that any deadly force used thereafter was unreasonable because the threat had ceased. However, in addressing that argument, the Court is guided by the holding from *Plumhoff v. Rickard*, 572 U.S. 765, 776, 134 S. Ct. 2012, 2021, 188 L. Ed. 2d 1056 (2014). There, the Supreme Court addressed a similar argument of whether a momentary standstill of an erratic driver ceased to be a public safety threat:

> Under the circumstances at the moment when the shots were fired, all that a reasonable police officer could have concluded was that [the suspect] was intent on resuming his flight and that, if he was allowed to do so, he would once again pose a deadly threat for others on the road. Rickard's conduct even after the shots were fired—as noted, he managed to drive away despite the efforts of the police to block his path—underscores the point.

*Plumhoff*, 572 U.S. at 776.

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. This case is the antithesis of Officers needing to make a split-second decision in a tense, uncertain, and rapidly evolving situation. The amount of force used, in the Court's view,

11

was the amount necessary because any non-deadly force applied, such as police signals or verbal commands, was evidently not an effective means of thwarting the Jeep's threat to the public and the Officers' safety. Waddell's insinuation that the Jeep was not a public safety threat or a threat to the Officers after entering the logging road is not well-taken or supported by the undisputed facts.

Ultimately, the Court concludes that the Officers acted reasonably under the circumstances because the Jeep "posed an actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase." *Scott*, 550 U.S. at 380. The Court in *Scott* held that a "police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." 550 U.S. at 386. Thus, it follows, the use of deadly force does not violate the Fourth Amendment in this case. *Id*.

The Court need not address the second prong of the qualified immunity analysis because answering "no" to the question of whether there was a constitutional violation is dispositive of the Plaintiff's claims against the Officers whose conduct is the subject of these Motions [85, 121]. *See McDonald*, 779 F. App'x at 225 (citing *Pearson*, 555 U.S. at 236); *see also Bryant*, 965 F.3d at 393 (holding that the court need not consider the second qualified immunity prong because Plaintiff failed to show a violation of any Fourth Amendment rights). Bearing in mind that at the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party, the Court finds that there are no disputed fact issues remaining that would change the outcome of the above analysis. The Court therefore finds that Officers Loyd and Voyles are entitled to qualified immunity, and the individual capacity claims against them are dismissed.

  II.  *Claims Against the City of Farmington*

As noted above, Waddell asserts a federal claim for failure to train against Farmington. She has also alleged a negligence claim.

In addressing Waddell's federal claim, the Court notes that, in the absence of a deprivation of a right secured by federal law, Section 1983 municipal liability cannot be sustained. *Roberson v. McDonald Transit Assocs., Inc.*, 574 F. App'x 323, 326 (5th Cir. 2014) (citing *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004)). As the Fifth Circuit aptly found in *Larpenter*, in order to establish a Section 1983 claim against a municipality, there must be "a deprivation of a right secured by federal law." 369 F.3d 475, 482 (5th Cir. 2004). Relying on the analysis set forth above, because Officer Loyd, the only Farmington Officer named in this action, did not violate Waddell's constitutional rights, Farmington cannot be held liable under Section 1983. That claim is therefore dismissed.[5]

Waddell also asserts a state law claim of negligence pursuant to the Mississippi Tort Claims Act ("MTCA"). The MTCA provides the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit. MISS.CODE ANN. § 11–46–7(1); *Moore v. Carroll County, Miss.*, 960 F.Supp. 1084, 1088 (N.D. Miss. 1997) ("The remedy provided pursuant to the MTCA is exclusive of any other state law remedy sought against a governmental entity or its employee."). Therefore, any tort claim filed against a governmental entity or its employee shall be brought only under the MTCA. *Id*. The MTCA provides a limited waiver of governmental entities' sovereign immunity for "claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment…" MISS. CODE ANN. § 11–46–5(1). However, it further

---

[5] Likewise, to the extent that Waddell has asserted an official capacity claim against Officer Loyd, it is also dismissed. *See Rayborn*, 881 F.3d at 417 (citation omitted).

provides that "a governmental entity and its employees acting within the course and scope of their employment duties shall not be liable for any claim…[a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities related to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any persons not engaged in criminal activity at the time of injury." MISS. CODE ANN. § 11–46–9(1)(c).

The Mississippi Supreme Court has recently held that "[r]eckless disregard is a higher standard than gross negligence and embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." *City of Vicksburg v. Williams*, 294 So. 3d 599, 601-02 (Miss. 2020). Thus, for Farmington to be subject to liability, Waddell would have to prove, beyond a preponderance of the evidence, that Officer Loyd acted with reckless disregard rather than negligence. *See Titus v. Williams*, 844 So.2d 459, 468 (Miss. 2003) (citing *Simpson v. City of Pickens*, 761 So.2d 855, 859 (Miss. 2000)) (holding "[t]he plaintiff has the burden of proving 'reckless disregard' by a preponderance of the evidence."). Reckless disregard is exhibited "when the conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved." *Williams*, 294 So. 3d at 601 (citation omitted) (internal quotes omitted).

Applying this standard to the facts of this case, in the absence of reckless disregard, Officer Loyd's actions fall squarely within the police-protection exemption contemplated by the statute which affords immunity to Farmington as the governmental entity with which he was employed. Having reviewed her submissions, the Court finds that Waddell has not come forward with sufficient evidence to create a genuine issue of material fact as to whether Officer Loyd acted with reckless disregard. Rather, the evidence before the Court illustrates that Officer Loyd shot at a

fleeing Jeep that had targeted Officers and which posed a danger to the public-at-large. Although deadly force was used, that fact alone does not constitute reckless disregard, when considered in the context of the circumstances of this case. The Court finds that Waddell has failed to provide sufficient evidence to survive summary judgment on her state law claim. The claim is therefore dismissed.

*Conclusion*

For the reasons set forth above, the present Motions [85, 121] are GRANTED. Officers Loyd and Voyles are entitled to qualified immunity, and all claims against them are dismissed. Likewise, all claims against the City of Farmington are dismissed.

SO ORDERED this, the 30th day of March, 2021.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE